Benito DAVILA, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 13–92–554–CR, 13–92–556–CR.

Court of Appeals of Texas,
Corpus Christi.

Jan. 20, 1994.

Thomas G. White, College Station, for appellant.

Carlos Valdez, Dist. Atty., James D. Rosenkild, Asst. Dist. Atty., Corpus Christi, for appellee.

Before FEDERICO G. HINOJOSA, Jr., J., SEERDEN, C.J., and DORSEY, J.

## OPINION

FEDERICO G. HINOJOSA, Jr., Justice.

We issued our opinion in these two cases on January 13, 1994. We withdraw our January 13, 1994, opinion and substitute the following as the opinion of the court.

This is the second appeal of these two cases. Appellant was indicted in Cause No. 13–92–556–CR for illegal possession of cocaine, and in Cause No. 13–92–554–CR the State sought to revoke his probation from a previous conviction. In both cases, appellant filed pretrial motions to suppress the evidence obtained by search warrant, and, after a hearing, the trial court denied the motions. Appellant waived a jury, and, on April 7, 1988, without a plea bargain, pleaded guilty to the possession charge and pleaded true to the allegation in the motion to revoke probation. In each case, the trial court assessed punishment at ten years' confinement, the sentences to run concurrently. Appellant then brought his first appeal.[1] On February 9, 1989, we issued our opinion and held that appellant's pleas were not voluntarily or knowingly entered, reversed both judgments, and remanded both cases to the 148th District Court of Nueces County for trial.

After remand, the 148th District Court transferred both cases to the 28th District Court of Nueces County. On June 15, 1989, the 28th District Court called the possession case for trial. Appellant and the State announced ready, and the appellant informed the court that he wanted to reurge his motions to suppress the evidence. The trial court stated that appellant's motions to suppress would be carried along with the trial. Appellant entered a plea of not guilty to the charge of unlawful possession of cocaine and waived a jury trial. Appellant and the State agreed and stipulated that the trial court could consider all of the evidence from the

---

1. *See Davila v. State,* 767 S.W.2d 205 (Tex.App.— Corpus Christi 1989, no pet.).

original suppression hearing and trial, including all of the exhibits, except for the judicial confession. Both sides rested and closed. The trial judge informed the parties that he was scheduled for vacation and that, since he needed time to review the evidence, he would recess the case and take it under advisement. The trial judge stated that his court manager was attending a seminar and that, as soon as she returned, he would ask her to reset the case during July 1989 and to provide notice to the parties. At the time, appellant was not in custody.

The court did not resume the proceedings until September 16, 1992, some 39 months later. In the interim, 1) appellant's counsel died, 2) appellant was placed on probation in Uvalde County for an offense which he committed on May 21, 1990, and 3) appellant was convicted of a federal offense in October 1990, for which he was ordered confined in a federal correctional institution for 22 years.

Appellant filed, in both cases, amended motions to suppress the evidence, motions to identify the informant, and motions to dismiss the indictment based on U.S. Constitution speedy trial grounds. Appellant also filed a motion for a "Franks"[2] hearing in the possession case. The trial court denied appellant's motions. The court found appellant guilty in the possession case and assessed punishment at 18 years' confinement and a $5,000.00 fine. The court also revoked appellant's probation and imposed the original sentence of 10 years' confinement and added a $10,000.00 fine. The trial court ordered both sentences to run concurrently and concurrently with the federal sentence.

By four points of error, appellant complains that the trial court erred by refusing to dismiss the indictment after he moved for a speedy trial, by denying appellant's motion for a "Franks" hearing, by assessing greater sentences after remand than the sentences assessed at the original sentencing, and by failing to grant his amended motions to suppress the evidence. We affirm the trial court's judgment.

By his first point of error, appellant complains that the trial court erred by failing to grant his motion to dismiss the indictment. He asserts that the 39 month delay denied him his right to a speedy trial under Article I, § 10 of the Texas Constitution and the Sixth Amendment to the U.S. Constitution.[3]

The United States Supreme Court has developed a four-part balancing test to be used in determining whether an accused has been denied a speedy trial:

1) the length of the delay,

2) the reason for the delay,

3) the defendant's assertion of his speedy trial right, and

4) prejudice to the defendant from the delay.

*Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972). The Supreme Court stated:

the rule we announce today, which comports with constitutional principles, places the primary burden on the courts and the prosecutors to assure that cases are brought to trial.

*Barker*, 407 U.S. at 529, 92 S.Ct. at 2191. The Court of Criminal Appeals has applied the *Barker* balancing test in determining whether a defendant has been denied his state speedy trial right. *Harris v. State*, 827 S.W.2d 949, 956 (Tex.Crim.App.1992). The delay in commencement of the trial must be of sufficient length to be presumptively prejudicial before a review of the remaining three factors is triggered. *Barker*, 407 U.S. at 532 n. 31, 92 S.Ct. at 2192 n. 31.

■ We have found no other case similar to the instant case. The record reflects that over 39 months elapsed from the time the State and defense rested and closed to the time the trial court rendered its judgment. Although there is no precise length of delay which automatically constitutes a violation of the right to a speedy trial, in the interest of

---

**2.** *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

**3.** Appellant's motion to dismiss raised the speedy trial issue only under the Sixth Amendment to the United States Constitution. However, appellant's brief raises both state and federal constitutional grounds.

justice, we will presume prejudice and review the facts of this case in light of the remaining three *Barker* factors.

This case is significantly different from the usual speedy trial cases where a lengthy delay between indictment and trial is justified in light of legitimate continuances or venue transfers. *See County v. State,* 812 S.W.2d 303, 310 (Tex.Crim.App.1989); *Hart v. State,* 818 S.W.2d 430, 437 (Tex.App.— Corpus Christi 1991, no pet.). The delay in this case did not occur between indictment and commencement of trial. The case was timely called for trial and both sides rested and closed. The record does not indicate a deliberate attempt by the prosecution to delay the proceedings. The 39 month delay occurred because the trial court recessed the case and took it under advisement. The record reflects no other reason for the delay. Even though the State offers no justification for the delay, we find no evidence in the record that the delay was intentional.

■ The appellant's assertion of his speedy trial right is entitled to strong evidentiary weight in determining whether he was deprived of the right, but "failure to assert the right ... make(s) it difficult for a defendant to prove he was denied a speedy trial." *Barker,* 407 U.S. at 531–32, 92 S.Ct. at 2193. Appellant produced no evidence that he ever urged the trial court, or tried to mandamus the trial court, to reach a verdict. The record contains no evidence that appellant formally asserted his right to a speedy trial prior to August 25, 1992, when he filed his motions to dismiss the indictment.[4] Appellant did not urge his motions to dismiss until September 16, 1992, when the trial court resumed the proceedings.

■ A defendant who invokes his right to a speedy trial is required to make some showing that the delay has been prejudicial. *Chapman v. Evans,* 744 S.W.2d 133, 137 (Tex.Crim.App.1988); *Phillips v. State,* 650 S.W.2d 396, 401 (Tex.Crim.App.1983). "Prejudice ... should be assessed in the light of

the [following] interests ... which the speedy trial right was designed to protect[:] (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker,* 407 U.S. at 532, 92 S.Ct. at 2193.

The record reflects 1) that appellant was not subjected to pretrial incarceration during the delay, and 2) that the second trial proceeded on stipulated evidence from the original suppression hearing and trial. Appellant presented no evidence that the delay caused him anxiety or concern and failed to specifically show how his defense was impaired.

We hold that appellant failed to diligently assert his right to a speedy trial and failed to show how he was prejudiced by the delay. We overrule appellant's first point of error.

■ By his third point of error, appellant contends that the trial court erred by assessing appellant greater sentences in 1992 than appellant received when he was originally sentenced in 1988. In 1988, appellant pleaded guilty to the offense of possession of cocaine and pleaded true to the allegation in the motion to revoke probation. In each case, the trial court assessed punishment at ten years' confinement, with the sentences to run concurrently. After remand, in 1992, appellant appeared before a new trial judge, entered a plea of not guilty to the possession charge and waived a jury trial. Appellant and the State announced ready, and appellant informed the court that he wanted to reurge his motions to suppress the evidence. The trial court stated that appellant's motions to suppress would be carried along with the trial. Appellant and the State agreed and stipulated that the trial court could consider all of the evidence from the original suppression hearing and trial, including all of the exhibits, except for the judicial confession. The State did not submit any evidence of other state and federal offenses which the defendant subsequently committed. Both sides rested and closed. The trial judge

---

4. In March, 1992, appellant sent letters to the prosecutor's office, pursuant to the Texas Open Records Act, requesting information regarding his criminal record. Appellant's correspondence brought the delay to the attention of the State.

On July 10, 1992, appellant sent a letter to the court and raised the speedy trial issue. Appellant filed his motions to dismiss the indictment on U.S. Constitution grounds on August 25, 1992.

informed the parties that since he needed time to review the evidence, he would recess the case and take it under advisement.

The trial court did not resume the proceedings until some 39 months later, when it found appellant guilty of the offense of possession of cocaine. During the 39 month period, appellant was placed on probation in Uvalde County for the offense of illegal investment, which he committed on May 21, 1990, and was convicted of a federal offense in October 1990, for which he was ordered confined in a federal correctional institution for 22 years. Immediately after it found appellant guilty of the offense, the trial court proceeded with the punishment phase of the trial. The State offered the testimony of a Corpus Christi police officer and then offered, without objection, a copy of the judgment and sentence of the Uvalde County case. The following colloquy then occurred between the trial court and appellant's counsel:

Trial Court: I understand a pre-sentence investigation is to be considered by the Court and everything in it may be considered for its appropriate purpose in assessing punishment. If there's anything incorrect, or that you feel is in error in the pre-sentence investigation, you can point that out to me.

&ast;   &ast;   &ast;   &ast;   &ast;   &ast;

Defense Counsel: And I would submit to you that the eighth one, 1991 federal—federal conviction has not been proved up or offered in the court, other than what's in the PSI.

Trial Court: Are you saying you don't want me to consider the fact that your—that your client is in federal custody?

Defense Counsel: No, I—I want you to consider the fact that he's in federal prison and serving 264 months.

Trial Court: All right.

The trial court then assessed punishment in the possession case at 18 years' confinement. The court also revoked appellant's probation and imposed the original sentence of 10 years' confinement and added a $10,000.00 fine. The trial court ordered both sentences to run concurrently and concurrently with the federal sentence.

■ Appellant argues that, had the trial properly concluded in 1989, the subsequent offenses would not have been available for consideration by the trial court in assessing appellant's punishment. The law is well settled that due process protection under the Fourteenth Amendment prohibits a state trial court from imposing a heavier sentence upon a defendant for the explicit purpose of punishing the defendant for having succeeded in getting his or her original conviction set aside by appeal. *North Carolina v. Pearce*, 395 U.S. 711, 723, 89 S.Ct. 2072, 2079–80, 23 L.Ed.2d 656 (1969). On retrial following a successful appeal, a trial court may not assess a greater punishment than was assessed in the first trial unless there is evidence that a defendant's subsequent conduct justifies an increase. *Pearce*, 395 U.S. at 726, 89 S.Ct. at 2081; *Bingham v. State*, 523 S.W.2d 948 (Tex.Crim.App.1975). In *Pearce*, the Supreme Court stated:

[W]henever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant *occurring after the time of the original proceeding.* And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal.

*Pearce*, 395 U.S. at 726, 89 S.Ct. at 2081. (Emphasis added).

■ *Pearce* creates a rebuttable presumption of judicial vindictiveness and interference with appellate due process where a judicial assessment of punishment increases following a successful appeal. The fact that these cases were tried before a different trial judge after remand overcomes the presumption of vindictiveness, however, and nothing in the record even remotely indicates that the new trial judge assessed the greater sentences to punish the appellant for exercising his right to appeal.

As of June 15, 1989, appellant had not engaged in any misconduct. The misconduct which the trial court considered to justify the increase in punishment occurred during the 39 month period that the trial court had the case under advisement. Although we agree with the general proposition that on retrial, a trial judge is not constitutionally precluded from imposing a greater sentence than the original sentence in light of events subsequent to the first trial that may shed new light upon the defendant's "life, health, habits, conduct, and mental and moral propensities,"[5] we are hesitant in allowing a result which would unfavorably tilt the proper balancing of appellant's due process rights against him.

The unique facts of this case allow the State to argue that trial commenced before the recess to negate the appellant's speedy trial complaint and then allow the State to benefit from its failure to dutifully prosecute the case by allowing it to introduce evidence of convictions which appellant committed more than one year after the case was called to trial. It appears that appellant might be prejudiced more by the inaction of the prosecution than by his own conduct.

Appellant contends that the trial court was precluded from considering any criminal conduct committed by him after June 15, 1989. Appellant argues that the trial court erred in assessing greater sentences because it considered the state offense which he committed on May 21, 1990. The record clearly reflects that on September 16, 1992, the trial court, during the punishment phase of the trial, considered that appellant was placed on probation in Uvalde County for the offense of illegal investment.[6] A copy of the Uvalde County judgment and sentence was made a part of the record. The trial court assessed appellant a greater punishment after it considered appellant's misconduct which occurred after the time of the original proceeding. We overrule appellant's third point of error.

By his second point of error, appellant complains that the trial court erred by failing to grant appellant's motion for a "Franks" hearing.

When a defendant makes a substantial preliminary showing that a false statement is made knowingly and intentionally or with reckless disregard for the truth, and the statement is included in the affidavit for a search warrant, and the statement is necessary to the finding of probable cause, the search warrant must be voided and the fruits of the search excluded if the remainder of the affidavit cannot stand on its own. *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676–77, 57 L.Ed.2d 667 (1978). Upon remand to the trial court, the appellant filed a *pro se* motion for a "Franks" hearing, which was argued in conjunction with appellant's amended motions to suppress. The trial court made no specific ruling on appellant's motion for a "Franks" hearing. Nevertheless, since appellant's motions to suppress the evidence and motion for a "Franks" hearing are significantly intertwined, we hold that appellant has preserved error.

We review the sufficiency of a search warrant affidavit under a "totality of the circumstances" standard. *See Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *Bower v. State*, 769 S.W.2d 887, 903 (Tex.Crim.App.), *cert. denied*, 492 U.S. 927, 109 S.Ct. 3266, 106 L.Ed.2d 611 (1989). The adequacy of the affidavit is judged by its "four corners." *Cerda v. State*, 846 S.W.2d 533 (Tex.App.—Corpus Christi 1993, no pet.). To be entitled to a "Franks" hearing, an accused must show that the affiant included information in the "four corners" of the affidavit which was either not true or placed in the affidavit with reckless disregard for the truth. *Franks*, 438 U.S. at 158, 98 S.Ct. at 2677–78. To prove reckless disregard, a defendant must show that the affiant in fact entertained serious doubts about the truth of his allegations. *Cerda*, 846 S.W.2d at 535 n. 4. An unnamed informant's reliability may be established by

---

5. *Pearce*, 395 U.S. at 723, 89 S.Ct. at 2079 (citing *Williams v. New York*, 337 U.S. 241, 245, 69 S.Ct. 1079, 1082, 93 L.Ed. 1337 (1949)).

6. The record does not reflect that the trial judge considered the federal conviction as a factor in assessing the increased sentence.

the affiant's general assertions stated in the affidavit concerning the informant's prior reliability. *Cerda*, 846 S.W.2d at 534.

■ Appellant does not complain to this court that the search warrant affidavit is insufficient on its face, but rather claims that the affidavit is invalid because the affiant either included false information in the affidavit or placed the information in the affidavit with reckless disregard for the truth. Appellant urged the trial court to grant his motion for a "Franks" hearing and requested that the identity of the informant be disclosed.

The search warrant affidavit, signed by John Houston, states in relevant part as follows:

1.  THERE IS IN NUECES COUNTY, TEXAS A SUSPECTED PLACE DESCRIBED AND LOCATED AS FOLLOWS:

    1214 Manchester, which is a single house, one story wood frame dwelling, which is further described as being white in color with red trim. The place to be searched to include the surrounding curtilage and any and all vehicles on the curtilage.

2.  SAID SUSPECTED PLACE IS IN CHARGE OF AND CONTROLLED BY EACH OF THE FOLLOWING NAMED PARTIES (HEREAFTER CALLED "SUSPECTED PARTY," WHETHER ONE OR MORE), TO WIT:

    Suspected party is known as "Benny" Tovar, and is described as being a hispanic male, approximately 40 years of age. He is further described as being approximately 5′ 09″ in height, and approximately 165 in weight.

3.  AFFIANT HAS PROBABLE CAUSE FOR SAID BELIEF BY REASON OF THE FOLLOWING FACTS, TO WIT:

    On December 10, 1987, the affiant received information from a reliable informant, who shall remain anonymous for security reasons, that said informant had been inside the said suspected place within the past fourty-eight (sic) (48) hours. While inside the suspected place the informant observed the said suspected party to be in possession of a quantity of said controlled substance, to-wit: COCAINE.

    Affiant has reason to believe and does believe the information to be true and correct because the above mentioned informant has provided the affiant with information on numerous narcotics violators which has proven to be true and correct.

Appellant argues that the confidential informant provided the affiant, John Houston, with inaccurate information, specifically the name, height and weight of the suspected party. Appellant also argues that the handwritten police report indicates the informant told the police that the suspected party was in possession of "heroin" rather than "cocaine," as alleged in the warrant.

Corpus Christi Police Sgt. John Houston testified that he wrote the offense report after he executed the affidavit and that he mistakenly wrote "heroin" rather than "cocaine" in the report. Houston also testified that he knew appellant used the name "Benny Tovar" as an alias and that he wrote the name and description of the suspected party in the affidavit as it was provided by the informant. We find no evidence in the record showing that Houston had any doubts about the reliability of the informant and the information which he supplied.

We hold that appellant failed to show that Houston knowingly and intentionally included a statement in the search warrant affidavit which was false or that he made such a statement in reckless disregard for the truth. We overrule appellant's second point of error.

■ By his fourth point of error, appellant complains that the trial court erred in failing to grant appellant's motions to suppress. Appellant argues that the search warrant's description of the premises was not sufficient to include the area where the contraband was discovered, specifically a detached garage adjacent to the house described in the warrant.

A search of the suspected residence was conducted. The search then moved into the detached garage which was separated by a wooden fence. Appellant argues that since

the parameters of the search to be conducted were not designated, the affidavit was over-broad and did not authorize the search of the garage as being within the curtilage of the house.

■■■ A warrant authorizing the search of a house also permits the search of other structures or areas inside the "curtilage" or area immediately surrounding the dwelling place. *See United States v. Moore*, 743 F.2d 254 (5th Cir.1984) (search of garage not connected to described house was within scope of warrant permitting search of "building, house or place" of defendant); *United States v. Anderson*, 485 F.2d 239 (5th Cir.1973), *cert. denied*, 415 U.S. 958, 94 S.Ct. 1487, 39 L.Ed.2d 573 (1974) (flowerbed outside house part of "residence" and subject to search); *McGlothlin v. State*, 705 S.W.2d 851 (Tex. App.—Fort Worth 1986), *rev'd on other grounds*, 749 S.W.2d 856 (Tex.Crim.App. 1988) (search of barn 125 feet from house within curtilage and scope of search); *Cantu v. State*, 557 S.W.2d 107 (Tex.Crim.App.1977) (chicken coop, 100–125 feet away from house, surrounded by fence attached to hurricane fence surrounding house, within "curtilage"); *Riojas v. State*, 530 S.W.2d 298 (Tex.Crim. App.1975) (shed within curtilage and subject to search). The Court of Criminal appeals has also addressed the issue of probable cause in the context of the search of a vehicle located on the suspected premises, and has held that a search warrant authorizing the search of the identified premises encompasses vehicles which are on the premises. *Hughes v. State*, 843 S.W.2d 591 (Tex.Crim. App.1992), (citing *Bower v. State*, 769 S.W.2d 887 (Tex.Crim.App.), *cert. denied*, 492 U.S. 927, 109 S.Ct. 3266, 106 L.Ed.2d 611 (1989)); *Heitman v. State*, 815 S.W.2d 681, 685 n. 6 (Tex.Crim.App.1991).

The issue before us is whether the warrant, authorizing the search of "the surrounding curtilage and any and all vehicles on the curtilage," allowed the police to search the garage which was detached and separated from the house by a wooden fence, but was located within a chain-link fence surrounding the entire property.

We recently considered a similar "extent-of-curtilage" case.[7] We reviewed the proximity of the intruded area to the home, the nature of the uses to which the area was put, whether the area was within the home's enclosure, and the steps the resident took to protect the area from observation by passers-by. *Emiliano*, 840 S.W.2d at 104. We concluded, in *Emiliano*, that police officers who entered a driveway and conducted a plain-view search of a detached garage intruded upon the curtilage and violated the appellant's protected Fourth Amendment privacy interests. Although the garage in *Emiliano* was not surrounded by an enclosure, we determined that since the garage stood in close proximity to the house and farther back from the street, there was a reasonable expectation of privacy attaching to the garage as much as there was to the house itself.

In the instant case, the record reflects that a chain-link fence surrounded the house and the detached garage. Sgt. Houston testified that a number of appellant's personal items were found in the garage. Appellant presented no additional evidence. The trial court found that appellant exercised control over the garage and held a reasonable expectation of privacy over it. Although the garage was surrounded by a wooden fence separating it from the house, we conclude that there was a reasonable expectation of privacy attaching to the garage as much as there was to the house itself. We hold that the detached garage was within the curtilage and that the search warrant's description was sufficient to allow the search of the garage. We overrule appellant's fourth point of error.

The judgments of the trial court are AFFIRMED.

---

7. *Emiliano v. State*, 840 S.W.2d 102 (Tex.App.— Corpus Christi 1992, pet. ref'd).